**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LUCKY LITTER LLC, <br> a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> APPLICA CONSUMER PRODUCTS, INC. <br> a Florida corporation, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No: <br> ) <br> ) <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) |

**COMPLAINT**

Plaintiff, Lucky Litter LLC ("Lucky Litter"), by its attorneys, and for its Complaint against Defendant Applica Consumer Products, Inc. ("Defendant" or "Applica"), states as follows:

**NATURE OF THE ACTION**

1. This action arises from Defendant's infringement of Lucky Litter's distinctive and valuable ScoopFree trademark (the "ScoopFree Mark"), which Lucky Litter uses in connection with its highly-acclaimed line of automatic self-cleaning cat litter boxes, manual cat litter boxes, and replacement litter trays (or cartridges) for both litter boxes. On or about June 12, 2009, Defendant began to advertise that a "ScoopMaid" replacement tray that "Works with the ScoopFree Litter box" would be "Coming Soon." Unless temporarily restrained and preliminarily enjoined, Defendant's forthcoming marketing and offering of "ScoopMaid" replacement trays for ScoopFree litter boxes is likely to cause confusion as to the affiliation or connection between Defendant and Lucky Litter, and as to the source, sponsorship, or approval

of Defendant's goods, resulting in the unjust enrichment of Defendant and in irreparable damage to Lucky Litter's ScoopFree Mark.

2. Defendant's encroachment on the ScoopFree Mark is just the latest in a series of actions Defendant has taken in an attempt to drive Lucky Litter out of business. Beginning in December 2008, Defendant began making false and misleading statements to Lucky Litter's customers about the customers' ability to sell ScoopFree products in view of certain patent proceedings that are currently pending between the parties. In its most recent effort to intimidate Lucky Litter's customers, and put its competitor Lucky Litter out of business, Applica has threatened to sue Lucky Litter's customers unless they refrain from purchasing Lucky Litter's disposable litter trays and, instead, purchase Defendant's "ScoopMaid" disposable litter trays for use with Lucky Litter's ScoopFree products.

3. Lucky Litter seeks, among other remedies, an order temporarily restraining, preliminarily enjoining and, thereafter, permanently enjoining, Defendant from marketing, manufacturing and/or selling "ScoopMaid" replacement trays for ScoopFree litter boxes, or *any replacement tray* for use with Lucky Litter's ScoopFree litter boxes. Lucky Litter also seeks an order preliminarily enjoining Defendant from suing any customer of Lucky Litter until the conclusion of the patent proceedings that are currently pending between the parties. Finally, Lucky Litter seeks damages for injuries that have been caused (and will continue to be caused if Defendant is not enjoined) by Defendant's marketing and/or offering of "ScoopMaid" replacement trays for ScoopFree litter boxes in violation of the Lanham Act (15 U.S.C. §§ 1051, *et seq.*), federal law governing false designation of origin (15 U.S.C. § 1125(a)), the Illinois Deceptive Trade Practices Act (815 ILCS § 510/2, *et seq.*), and the common law regarding trademark infringement and unfair competition.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Defendant because Defendant has engaged in business activities in, and directed to, the State of Illinois and within this judicial district, and because Defendant has knowingly committed tortious acts aimed at, and causing harm within, the State of Illinois and this judicial district.  Moreover, Defendant maintains a registered agent for the service of process in this state in Springfield, Illinois.

5.     This Court has jurisdiction over the subject matter herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.  Lucky Litter's claims are, in part, based on violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051-1127, *et seq*.  The Court has jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §§ 1338(b) and 1367.

6.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) and (c) because it is where Lucky Litter and Defendant reside, because Plaintiff and Defendant transact business in this district, because Defendant is subject to personal jurisdiction in this district, and Plaintiff's only office is in this district.  Furthermore, the damage to Lucky Litter and its intellectual property described herein continues to occur in this judicial district.

## PARTIES

7.     Plaintiff, Lucky Litter, is a Delaware limited liability company, with its principal and only place of business at 2 North Riverside Plaza, Chicago, Illinois.  Lucky Litter has 10 employees, all of whom who work in its Chicago offices at 2 North Riverside Plaza.

8.     Defendant Applica Consumer Products, Inc. ("Applica") is a Florida corporation having its principal place of business at 3633 Flamingo Road, Miramar, Florida 33027.

## LUCKY LITTER'S BUSINESS AND SCOOPFREE MARK

9.     Lucky Litter develops and sells innovative pet products that allow pet lovers to spend less time on unpleasant pet care chores so they can spend more quality time with their

pets. Lucky Litter is best known for its revolutionary ScoopFree automatic and quick-clean manual litter boxes that utilize a disposable litter tray, all of which are sold under the ScoopFree Mark. Because the disposable litter trays are pre-filled with Fresh Step® Crystals litter (the "ScoopFree Litter Tray"), which provides unbeatable odor control, the automatic ScoopFree litter boxes can be left alone for weeks at a time. In addition, because the ScoopFree Litter Tray is completely disposable, consumers do not have to see, touch, or smell messy waste. Consumers simply replace the ScoopFree Litter Tray every few weeks, and their ScoopFree litter box is just like new. As such, the ScoopFree Litter Tray is both a highly innovative and a substantial component of Lucky Litter's business.

10. Since adopting the ScoopFree Mark in 2005, Lucky Litter has expended considerable time, resources and effort in promoting its ScoopFree Mark throughout the United States and elsewhere. The company promotes and advertises its mark on a global basis, through regular Internet advertisements, its website located at http://scoopfree.com/, by attending trade shows in the United States and elsewhere, and through the promotional materials and other advertisements circulated and displayed by its major retail customers. Its total sales of ScoopFree-branded products exceed one million units. As a result of these efforts, Lucky Litter has built substantial recognition and goodwill and has developed significant intellectual property rights in its ScoopFree Mark, for which it has been issued a federal trademark registration by the United States Patent and Trademark Office. A copy of the Certificate of Registration is filed herewith as Exhibit 1. As a consequence of the extensive advertising, promotion, and use of Lucky Litter's ScoopFree Mark, Lucky Litter has developed enormous recognition for its services under its ScoopFree Mark and has acquired and enjoys an immensely valuable reputation and tremendous goodwill under its ScoopFree Mark.

**DEFENDANT'S BUSINESS AND ITS "SCOOPMAID" DISPOSABLE LITTER TRAYS**

11.     Defendant Applica is a competitor of Lucky Litter.  Defendant manufactures and sells self-cleaning cat litter boxes under the brand name "LitterMaid."  Unlike Lucky Litter's ScoopFree litter boxes, however, Defendant's self-cleaning litter boxes do not, *and cannot*, work with a disposable litter tray.  Thus, while the purchaser of a ScoopFree litter box can avoid having to see, smell or touch any messy cat waste by simply disposing of ScoopFree Litter Tray every 30 days, a purchaser of a LitterMaid self-cleaning litter box must still empty a waste bin periodically, refill the litter bed, and then take the unit apart for washing and cleaning.

12.     Lucky Litter recently learned from one of its biggest retail customers, who is also a customer of Defendant, that Defendant would soon be offering disposable litter trays for use with Lucky Litter's ScoopFree products. On June 12, 2009, Lucky Litter visited Applica's LitterMaid website and discovered that Applica was advertising that a "ScoopMaid" disposable litter tray that "Works with the ScoopFree Litter box" would be "Coming Soon." *See* http://littermaid.com/ (last visited June 17, 2009).  A true and correct copy of a screenshot from Defendant's website, which advertises the "ScoopMaid" replacement trays for ScoopFree litter boxes, is filed herewith as Exhibit 2.  That advertisement is also reproduced below:




13.     Prior to running the advertisement set forth above, Defendant Applica had actual knowledge that Lucky Litter offers the identical product under its ScoopFree Mark. In fact, Lucky Litter and Defendant are currently involved in two patent infringement lawsuits, both of which concern Lucky Litter's ScoopFree self-cleaning litter boxes.

## THE PATENT INFRINGEMENT DISPUTES

14.     On March 8, 2007, Applica filed a patent infringement lawsuit against Lucky Litter in the United States District Court for the Eastern District of Texas, alleging that the LB model ScoopFree self-cleaning litter boxes infringed two patents: U.S. Patent Nos. Re. 36,847 ("the '847 patent") and 6,082,302 ("the '302 patent). Applica Consumer Products, Inv. v. Doskocil et al., No. 2:07-cv-73-CE (E.D. Tex.) (the "Texas Lawsuit"). Because neither Applica nor Lucky Litter has any offices or employees in the Eastern District of Texas, and because no witnesses are located in the Eastern District of Texas, Lucky Litter immediately moved to transfer the Texas Lawsuit to this District. Although the motion was initially denied, in January 2009, Lucky Litter moved for reconsideration in view of In re TS Tech USA Corp., 551 F.3d 1315 (Fed. Cir. 2008). The motion is fully-briefed and under submission.

15.     In November of 2007, Applica filed a Complaint with the United States International Trade Commission, charging Lucky Litter and other manufacturers with infringement of the '847 patent, but not the '302 patent. In the Matter of Certain Self-Cleaning Litter Boxes and Components Thereof, Inv. No. 337-TA-625 (U.S. Int'l Trade Comm'n) ("the ITC Action"). Applica did not name any of Lucky Litter's customers as respondents in the ITC Action.

16.     Because the '847 patent was asserted in the ITC Action, the claim of infringement of the '847 patent was stayed in the Texas Lawsuit pursuant to 28 U.S.C. § 1659(a). As a result, no substantive ruling has been issued in the Texas Lawsuit, despite the fact that the case has been

pending for more than two years.  Applica did not name any of Lucky Litter's customers as defendants in the Texas Lawsuit.  Moreover, the deadline for adding new parties expired on January 15, 2009.

17. On December 1, 2008, the Administrative Law Judge ("ALJ") issued an Initial Determination ("Initial Determination") in the ITC Action, finding that the ScoopFree self-cleaning litter boxes Lucky Litter was manufacturing at that time (the "LB Models") infringed only one claim of the '847 patent.

18. Lucky Litter will appeal the ITC ruling prior to the deadline of August 6, 2009. To avoid having its automatic litter boxes excluded from importation during the pendency of the appeal, Lucky Litter redesigned its self-cleaning litter boxes, ceased marketing its LB Models, and began to market new SX model ScoopFree self-cleaning litter boxes (the "SX Models"), which lacked a feature necessary to infringe.  Lucky Litter also began to market a new litter box called the ScoopFree Slide, which also uses the ScoopFree Litter Tray, but is not self-cleaning. On December 15, 2008, Lucky Litter submitted a declaration to the ITC, informing the ITC and Applica that Lucky Litter was marketing the SX model ScoopFree automatic litter boxes and the ScoopFree Slide manual litter box.

19. On April 8, 2009, the ITC issued a limited exclusion order ("LEO") that, beginning on June 7, 2009, would prohibit importation of "Self-cleaning litter boxes and components thereof, including cartridges, covered by claim 33 of U.S. Patent No. Re. 36,867," made or imported by or on behalf of Lucky Litter.  Because Lucky Litter's customers were not named as respondents in the ITC Action, the ITC has no jurisdiction over any of them, and any order issued by the ITC cannot apply to them. Kyocera Wireless Corp. v. ITC, 545 F.3d 1340, 1358 (Fed. Cir. 2008).

20.     To clarify the scope of the LEO, and to ensure that the non-infringing ScoopFree litter boxes could be legally imported, Lucky Litter sought and obtained written rulings from U.S. Customs and Border Protection ("Customs") indicating that the ScoopFree Slide, the ScoopFree Litter Trays, and the ScoopFree SX Models are not covered by the LEO. Copies of Customs' written rulings are filed herewith as Exhibits 3-5.

21.     Therefore, the only products barred from importation under the LEO are the LB Models, which Lucky Litter no longer makes, markets or sells.

### DEFENDANT'S ONGOING INTERFERENCE WITH LUCKY LITTER'S CUSTOMER RELATIONSHIPS

22.     Beginning with the ALJ's Initial Determination in December of 2008, and with knowledge that Lucky Litter was marketing the ScoopFree Slide manual litter box and ScoopFree SX Models self-cleaning litter boxes, Applica started contacting Lucky Litter's customers, major pet retailers across the United States, falsely informing them that the Initial Determination required them to remove all of Lucky Litter's ScoopFree products from store shelves.

23.     After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that, on December 18, 2008, Applica's counsel sent a letter to many of these same customers, falsely informing them that the ALJ's Initial Determination found that *all* of Lucky Litter's self-cleaning litter boxes infringed Applica's patent (the "December 18th Letter").

24.     On December 31, 2008, after Lucky Litter was contacted by several of its customers wanting to know if Applica's characterization of the Initial Determination was accurate, Lucky Litter's counsel sent a cease and desist letter to Applica, demanding that Applica stop its unwarranted demands that Lucky Litter's customers remove ScoopFree products from

their shelves and cease marketing ScoopFree products, and that its counsel send a letter of retraction to each and every one of Lucky Litter's customers who received a copy of the December 18th Letter, or a similar letter from Applica.

25. Lucky Litter received no response to its December 31st letter.

26. Then, when the ITC issued the LEO on April 8, 2008, Applica used this opportunity to again falsely inform Lucky Litter's customers that the LEO prohibited Lucky Litter from importing *all* of its ScoopFree products into the United States.

27. After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that Applica falsely and misleadingly informed Lucky Litter's customers that the ITC's ruling is dispositive on the issue of infringement, and that all that remains to be determined in the Texas Lawsuit is the amount of damages.

28. On March 6, 2009, Lucky Litter again attempted to mitigate its damages by sending another letter to Applica, identifying the false statements Applica and its representatives were making to Lucky Litter's customers and demanding that they stop immediately. Again, Lucky Litter received no response its letter.

29. Finally, after Lucky Litter successfully obtained the rulings from Customs, clearly indicating that the ScoopFree Slide, ScoopFree Litter Trays, and the ScoopFree SX Models are not covered by the LEO, Applica engaged in its most egregious conduct to date—threatening to sue Lucky Litter's customers for past infringement *unless* these customers agreed to stop purchasing ScoopFree Litter Trays from Lucky Litter and, instead, purchase disposable litter trays from Applica for use with Lucky Litter's ScoopFree litter boxes.

30. More than two years have passed since Applica filed its patent infringement action in Texas against Lucky Litter. The deadline for adding parties to that case expired in January 2009. Applica has not sued any customers for infringement, but has threatened and

continues to threaten to sue several of Lucky Litter's customers for past infringement of Applica's patents based on these customers' sale of Lucky Litter's prior LB Models of the ScoopFree self-cleaning litter boxes (no longer in production) *unless* these customers agree not to purchase any more ScoopFree Litter Trays from Lucky Litter.

31. Because none of Lucky Litter's ScoopFree litter boxes will work without the ScoopFree Litter Tray, Applica has specifically designed the confusingly-similar ScoopMaid litter trays for use with ScoopFree litter boxes to satisfy that demand.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

32. Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 31 of this Complaint.

33. As a result of Lucky Litter's extensive use and promotion of the ScoopFree Mark and Lucky Litter's commitment to seeking federal registration for, and protecting the distinctiveness of, the ScoopFree Mark, the ScoopFree Mark enjoys considerable goodwill, widespread recognition, and secondary meaning in commerce that has become associated with Lucky Litter and its goods and services.

34. Prior to Defendant's advertisement of ScoopMaid litter trays for use with ScoopFree litter boxes, Defendant had actual knowledge and constructive notice (pursuant to 15 U.S.C. § 1072) of Lucky Litter's ownership and registration of the ScoopFree Mark.

35. 70. After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that Defendant, in order to cause confusion or mistake or to deceive consumers, and in an attempt to trade on the enormous goodwill, reputation, and marketing power established by Lucky Litter under Lucky Litter's ScoopFree mark, deliberately and willfully advertised in interstate commerce that it intends to offer for sale a ScoopMaid

replacement litter tray that "works with ScoopFree Litter boxes," and that such ScoopMaid replacement trays would be "coming soon."

36. After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that Defendant has offered to sell ScoopMaid replacement litter trays for ScoopFree litter boxes in interstate commerce, including in this judicial district.

37. The ScoopMaid replacement trays for ScoopFree litter boxes that Defendant intends to sell will compete with ScoopFree replacement litter trays for ScoopFree litter boxes, and are being offered through the same channels of trade and/or advertising and to the same consumer groups.

38. Lucky Litter has not consented to Defendant's use of ScoopMaid in connection with replacement litter trays for ScoopFree litter boxes.

39. Defendant's unauthorized use of ScoopMaid for replacement litter trays in conjunction with the tagline "Works with ScoopFree® Litter boxes," falsely indicates to consumers that Defendant's goods and services are in some manner connected with, sponsored by, affiliated with, related to, or approved by Lucky Litter.

40. Defendant's unauthorized use of ScoopMaid for replacement litter trays in conjunction with the tagline "Works with ScoopFree® Litter boxes," is likely to cause consumers to be confused as to the source, nature, and quality of the goods and services that Defendant is offering.

41. Defendant's use of ScoopMaid for replacement litter trays in conjunction with the tagline "Works with ScoopFree® Litter boxes," deprives Lucky Litter of the ability to control consumer perception of the quality of the services marketed under Lucky Litter's ScoopFree Mark and, instead, places Lucky Litter's valuable reputation and goodwill into the hands of Defendant, over whom Lucky Litter has no control.

42. The aforementioned acts of Defendant constitute federal trademark infringement in violation of 15 U.S.C. § 1114.

43. The intentional nature of Defendant's acts makes this an exceptional case under 15 U.S.C. § 1117(a).

44. Lucky Litter has been, is now, and will be irreparably harmed by Defendant's aforementioned acts of infringement, and, unless enjoined by the Court, Defendant will continue to infringe upon Lucky Litter's ScoopFree Mark. There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING (15 U.S.C. § 1125(A))

45. Lucky Litter realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 44 of this Complaint.

46. As a result of Lucky Litter's extensive use and promotion of Lucky Litter's ScoopFree Mark and Lucky Litter's commitment to seeking federal registration for, and protecting the distinctiveness of, its ScoopFree Mark, its ScoopFree Mark enjoys considerable goodwill, widespread recognition, and secondary meaning in commerce that has become associated with Lucky Litter and its goods and services.

47. Defendant's unauthorized use of ScoopMaid for replacement litter trays in conjunction with the tagline "Works with ScoopFree® Litter boxes," falsely suggests that Defendant's business is connected with, sponsored by, affiliated with, or related to Lucky Litter.

48. Defendant's unauthorized use of ScoopMaid for replacement litter trays, as alleged herein, constitutes false designation of the origin of Defendant's goods and/or services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)).

49. Beginning with the December 1, 2008 Initial Determination issued by the ITC's ALJ, Defendant began to threaten Lucky Litter's customers by making false and misleading statements in the marketplace.

50. Defendant falsely informed Lucky Litter's customers that they were required by the ALJ's Initial Determination to remove Lucky Litter's products from their shelves.

51. Defendant falsely informed Lucky Litter's customers that the ITC's LEO prohibited Lucky Litter from importing all of its ScoopFree products.

52. After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that Defendant has falsely and misleadingly informed Lucky Litter's customers that the ITC's ruling is dispositive on the issue of infringement, and that all that remains to be determined in the Texas Lawsuit is the amount of damages.

53. Defendant's false and misleading statements to Lucky Litter's customers were objectively baseless, made in bad faith, and made in commercial advertising or promotion and misrepresent the nature, characteristics, or qualities of Lucky Litter's ScoopFree replacement trays, in violation of 15 U.S.C. §1125(a)(1)(B).

54. The intentional nature of Defendant's aforementioned acts makes this an exceptional case pursuant to 15 U.S.C. § 1117.

55. Lucky Litter has been, is now, and will be irreparably harmed by Defendant's aforementioned acts of infringement and, unless enjoined by the Court, Defendant will continue to infringe upon Lucky Litter's ScoopFree Mark. There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

## THIRD CAUSE OF ACTION
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

56. Lucky Litter realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 55 of this Complaint.

57. Defendant's conduct constitutes deception by which Defendant's goods and services have been palmed off as those of Lucky Litter. Such conduct constitutes trademark infringement and unfair competition in violation of the common law of the Illinois.

58. Lucky Litter has used its ScoopFree Mark in connection with the marketing, creation, distribution and sale of cat litter boxes and related products since 2005. By reason of Lucky Litter's extensive use and promotion of the ScoopFree Mark, the ScoopFree Mark has become uniquely associated with Lucky Litter and identifies Lucky Litter as the source of ScoopFree goods.

59. Defendant's unauthorized use of ScoopMaid for replacement litter trays in conjunction with the tagline "Works with ScoopFree® Litter boxes," is likely to cause confusion or mistake, or is likely to deceive customers, consumers, the general public, and the trade as to the affiliation, connection, or association between Lucky Litter and Defendant and/or as to the origin of, sponsorship of, or other association between the parties' respective goods.

60. By reason of the foregoing, Defendant has infringed and is continuing to infringe on Lucky Litter's common law rights in and to Lucky Litter's ScoopFree Mark, and Defendant has become unjustly enriched by such acts of infringement.

61. Defendant's unlawful conduct has been and continues to be willful or willfully blind to Lucky Litter's rights, as Defendant has reason to know of Lucky Litter's rights.

62. Lucky Litter has been and will continue to be irreparably harmed by Defendant's aforementioned acts of trademark infringement and unfair competition, and, unless enjoined by

the Court, Defendant's wrongful acts will continue.  There is no adequate remedy at law for the harm caused by the acts of infringement and unfair competition alleged herein.

## FOURTH CAUSE OF ACTION
## UNIFORM DECEPTIVE TRADE PRACTICES (815 ILCS § 510/2, *et seq.*)

63. Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 62 of this Complaint.

64. Defendant has engaged in unfair or deceptive acts or practices, and thereby has (a) created a likelihood of confusion or misunderstanding with regard to the source, sponsorship, or approval of the goods it is offering for sale; (b) created a likelihood of confusion or misunderstanding with regard to whether Defendant is affiliated, connected, or associated with Lucky Litter; and (c) otherwise engaged in conduct creating a likelihood of confusion or misunderstanding.  The aforementioned acts and/or other activities of Defendant violate the Uniform Deceptive Trade Practices Act, as adopted by Illinois (815 ILCS § 510/2, *et seq.*).

65. Defendant has willfully engaged in the deceptive trade practices complained of herein.

66. Lucky Litter has been, is now, and will be irreparably harmed by Defendant's aforementioned acts, and unless enjoined by this Court, Lucky Litter will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which there is no adequate remedy at law.

## FIFTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

67. Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 66 of this Complaint.

68. Lucky Litter obtained significant purchase orders for its ScoopFree products from one of its biggest customers, whose name will remain confidential for purposes of this Complaint.

69. In reliance on these purchase orders, Lucky Litter increased its supply of the requested ScoopFree products.

70. After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that Defendant was aware of these purchase orders.

71. Without legal justification, Defendant threatened to sue Lucky Litter's customer for past infringement if the customer purchased the requested ScoopFree products from Lucky Litter, which Defendant knew were not infringing.

72. Defendant made these threats with the intent to induce Lucky Litter's customer to cancel its outstanding purchase orders.

73. After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that, as a result of Defendant's threats, Lucky Litter's customer cancelled its outstanding purchase orders, resulting in significant lost revenue for Lucky Litter.

74. Lucky Litter's business relationship with this customer has also been damaged by Defendant's wrongful and unjustified conduct in and amount to be determined at trial.

75. Lucky Litter is without adequate remedy at law.

76. The acts of Defendant complained of have caused and continue to cause irreparable injury to Lucky Litter.

77. Lucky Litter is entitled to a temporary restraining order, preliminary injunction and permanent injunction preventing Defendant from marketing replacement litter trays for Lucky Litter's ScoopFree litter boxes, from making false and misleading statements concerning

the effect of the ITC orders, and from filing suit for infringement against Lucky Litter's customers until the conclusion of the patent proceedings.

78.     Lucky Litter has been damaged by the acts of Defendant complained of herein, and is entitled to damages for the injury it has suffered.

## SIXTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

79.     Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 78 of this Complaint.

80.     Because Lucky Litter's ScoopFree litter boxes (both self-cleaning and manual) are designed to operate with the disposable ScoopFree Litter Trays, Lucky Litter had a reasonable expectation of continuing to sell a significant volume of its replacement ScoopFree Litter Trays to certain of its existing major retail customers.

81.     Defendant, a major competitor of Lucky Litter, was aware of this expectation.

82.     By virtue of Defendant's threats of litigation, made in bad faith, and its false and misleading statements concerning Lucky Litter's ScoopFree products discussed herein, Lucky Litter has been unable to sell its ScoopFree Litter Trays and other ScoopFree products to some of its customers, resulting in lost revenue for Lucky Litter.

83.     Lucky Litter has been damaged by Defendant's wrongful conduct in its business relationships as a direct and proximate cause of Defendant's unlawful and unjustified conduct in an amount to be determined at trial.

84.     Lucky Litter is without adequate remedy at law.

85.     The acts of Defendant complained of have caused and continue to cause irreparable injury to Lucky Litter.

86. Lucky Litter is entitled to a temporary restraining order, preliminary injunction and permanent injunction preventing Defendant from marketing replacement litter trays for Lucky Litter's ScoopFree litter boxes, from making false and misleading statements concerning the effect of the ITC orders, and from filing suit for infringement against Lucky Litter's customers until the conclusion of the patent proceedings.

87. Lucky Litter has been damaged by the acts of Defendant complained of herein, and is entitled to damages for the injury it has suffered.

## PRAYER FOR RELIEF

WHEREFORE, Lucky Litter respectfully prays for relief as follows:

1. Entry of an order temporarily restraining, preliminarily enjoining and, thereafter, permanently enjoining Defendant from marketing, manufacturing and/or selling "ScoopMaid" replacement trays for ScoopFree litter boxes, *or any replacement tray* for use with Lucky Litter's ScoopFree litter boxes;

2. Entry of an order and judgment requiring that Defendant, its subsidiaries, officers, agents, servants, employees, owners, and representatives, and all other persons or entities in active concert or participation with them, be preliminarily and, thereafter, permanently enjoined and restrained from (a) using in any manner the term "ScoopMaid" as part of a trademark, or any other name, mark and/or domain name that incorporates the term "scoop" as the leading or dominant portion; and (b) doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, including prospective customers of Lucky Litter, as to the source of the goods or services offered, distributed or marketed by Defendant, or as to whether there is a connection between Defendant and Lucky Litter;

3. A judgment ordering Defendant, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Lucky Litter within thirty (30) days after entry of the injunction, a report in

writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction and implemented adequate and effective means to discontinue marketing, manufacturing and/or selling "ScoopMaid" replacement trays for ScoopFree litter boxes;

4. A judgment ordering Defendant, pursuant to 15 U.S.C. § 1118, to deliver for destruction, or to show proof of said destruction or sufficient modification to eliminate, all articles, packages, wrappers, products, displays, labels, signs, circulars, kits, packaging, letterheads, business cards, literature, materials, receptacles, and any other matter in the possession, custody, or under the control of Defendant, including their respective subsidiaries, agents, and distributors, bearing the term "ScoopMaid";

5. A judgment ordering Defendant, pursuant to 15 U.S.C. § 1118, to delete any and all information and/or computer files bearing the term "ScoopMaid", including, without limitation, any text and/or images that are hosted on any internet website under Defendant's control or otherwise with Defendant's authorization or on any of Defendant's computers or hard drives or other storage media;

6. A judgment that, pursuant to 15 U.S.C. § 1117(a) and (b), Lucky Litter be awarded its reasonable attorneys' fees from Defendant, together with three (3) times the amount of whichever is greater: (a) Defendant's profits from their use of "ScoopMaid" in connection with replacement trays for ScoopFree litter boxes, or (b) Lucky Litter's actual damages resulting from Defendant's use of "ScoopMaid" in connection with replacement trays for ScoopFree litter boxes;

7. Entry of an order preliminarily enjoining Defendant from suing any customer of Lucky Litter until the conclusion of the patent proceedings that are currently pending between the parties;

8. Entry of an order, preliminarily, and, thereafter, permanently enjoining Defendant from making any false or misleading statement to any customer, or prospective customer, of Lucky Litter regarding the nature of the rulings issued in connection with the ITC Action or the Texas Lawsuit;

9. A judgment in connection with the asserted common law claims and/or otherwise permitted by law, including, without limitation, an award of punitive damages in favor of Lucky Litter in an amount to be determined; and

10. A judgment granting Lucky Litter such other and further relief as this Court deems just and proper.

## JURY DEMAND

Lucky Litter hereby demands a jury trial.


Dated: June 17, 2009           Lucky Litter LLC

                               By:  /s/    Eric C. Cohen
                                    One of Its Attorneys

                                    Eric C. Cohen
                                    Carolyn M. Passen
                                    Jeremy C. Daniel
                                    KATTEN MUCHIN ROSENMAN LLP
                                    525 W. Monroe Street
                                    Chicago, IL 60661-3693
                                    Telephone: 312.902.5200
                                    Facsimile: 312.902.1061